H. A. WALKER, INTERVENING PETITIONER, *Appellant*, v. J. B. McNEIL AND W. C. ROBERTS, RECEIVERS, *et al.*, *Appellees*.

Opinion Filed November 6, 1914.

Under the facts and circumstances alleged and admitted by demurrer in this case a trust should be decreed in favor of the petitioner for the proceeds of the check that was deposited for collection on the eve of the closing of the bank, the proceeds having been actualily collected after the failure of the bank and applied to the purposes of the bank assets in the hands of the receivers for the benefit of creditors and stockholders of the bank.

Appeal from Court of Record for Escambia County; Kirke Monroe, Judge.

Order reversed.

## STATEMENT.

As an intervenor in a suit brought by the State Comp-troller in which receivers had been appointed to take charge of the affairs of the Pensacola State Bank, H. A. Walker alleges in his petition: "That on the 4th day of December, A. D. 1913, your petitioner was the owner, by endorsement, of a certain cashier's check, No. 9664, drawn on the First National Bank of North Bennington, Ver-mont, and signed by the Cashier thereof, R. A. Jones, and payable to the order of Grout Brothers, and dated No-vember 28, 1913, which had been theretofore endorsed by the said Grout Brothers to Ernest M. Lathrop, and by the said Ernest M. Lathrop endorsed to your petitioner, said check or draft being in the sum of One Thousand ($1000.00) Dollars.

2.

That on the said 4th day of December, A. D. 1913, your petitioner deposited the said check or draft with the Pensacola State Bank, to be forwarded and collected by said bank, and its proceeds, when collected, to be cred-ited to petitioner, and he thereupon endorsed the said check or draft to the said bank; that on the 4th day of December, A. D. 1913, the said bank did endorse the said check or draft and directed the same to be paid to the order of any bank or banker or trust company, all prior endorsements guaranteed, and did deposit the same, either

in the mails of the United States, or deliver the same to the Southern Express Company, for transmission and collection, to the Mutual Alliance Trust Company of New York City, the said deposit so made by your petitioner, having been made only a short time before the close of banking hours on the said 4th day of December, A. D. 1913. Your petitioner did not receive any consideration from said bank for his endorsement aforesaid, or for said draft, nor did he draw any checks against the same.

That sometime during the night of December 4, 1913, it was decided by the said bank to suspend payment, and to close its doors for business, and to turn the assets of the bank over to the custody of the Comptroller of the State of Florida; and, in pursuance of said decision, the Comptroller, on the morning of December 5, 1913, took charge of the said bank and its assets, and the said bank was closed for business, and the original Bill in this cause was filed; and, in the course of said proceedings, on December 6, 1913, W. C. Roberts and J. B. McNeill, were appointed Receivers, to administer the said assets; all of which was effected prior to the receipt of the said draft above described by the Mutual Alliance Trust Company of New York;

4.

Your petitioner, on the 5th day of December, A. D. 1913, upon ascertaining the fact of the closing of the said bank, telegraphed and informed the said First National Bank of North Bennington, Vermont, of the said insolvency of the Pensacola State Bank, and he demanded that it stop payment and refuse to pay the said check or draft when presented; Your petitioner did not know, and could not ascertain to whom the said check or draft had

been sent by the Pensacola State Bank; that the said First National Bank of North Bennington, notwithstanding the direction and demand of your petitioner, did pay the said draft or check when presented.

Your petitioner, at a time prior to the acts of the Receivers hereinafter alleged, in dealing with the proceeds of said draft, and before any transactions by said Receivers in respect to the credit obtained by said Pensacola State Bank with the Mutual Alliance Trust Company, aforesaid, did notify the said Receivers of the facts and circumstances of the obtaining of petitioner's endorsement on said draft, as alleged in this petition, by the officers of the Pensacola State Bank, and did notify and inform them at said time that he elected to rescind the said endorsement of said draft, and intended to reclaim the same, or the proceeds thereof, where and when found;

5.

Petitioner is informed and believes, and upon said information and belief alleges, that on the 8th day of December, A. D. 1913, and after the Receivers had been appointed by this court, the Mutual Alliance Trust Company of New York did receive the said draft for deposit and collection from the Pensacola State Bank, and did thereupon endorse and collect the said draft from the First National Bank of North Bennington, Vermont. That the said Mutual Alliance Trust Company did not pay any good or valuable consideration for the said paper, but, on the contrary, received the same in the usual course of business, for collection, to be credited on its books to the Pensacola State Bank, and thereafter to be subject to check of said bank. That theretofore, said Pensacola State Bank had borrowed money from said Mutual Alliance Trust

Company, and had executed two certain promissory notes, each in the sum of Ten Thousand ($10,000.00) Dollars, one due January 2, A. D. 1914, and the other due January 19, A. D. 1914, and to secure the payment of which, said Pensacola State Bank did, at the time of the execution of said notes, assign and endorse as collateral the following notes then owned by it, with collateral, as follows:

Walker v. McNeil *et al.*—Statement.

| Maker. | Date due. | Amt. | Collateral. |
|---|---|---|---|
| T. A. Jennings; | Jan. 2, 1914, | $ 3,918.45 | 50 Shares Cap. Stock Owens Land Co., |
| Hooton & Watson; | Oct. 13, 1913, | 5,000.00 | J. J. Hooton endorsement. |
| West Fla. Grocery Co., | Mch. 21, 1914, | 5,000.00 | A. F. Padrick; R. F. Mitchell and A. R. McAllister endorsement. |
| W. A. Blount, Jr., | Jan. 5, 1914, | 3,248.00 | Packard Land Co. endorsement. |
| Alfred Moog, | Dec. 19, 1913, | 1,000.00 | A. Greenhut endorsement. |
| Blount Construction Co. | Jan. 13, 1914, | 5,000.00 | Endorsed by W. A. Blount, and |
| Blount Construction Co. | Jan. 13, 1914, | 5,000.00 | mortgage of R. A. Fisher on her |
| Blount Construction Co. | Jan. 13, 1914, | 5,000.00 | interest in estate of Wm. Fish- |
| Blount Construction Co. | Jan. 13, 1914, | 5,000.00 | er, and assignment of Life In- |
| Blount Construction Co. | Jan. 13, 1914, | 5,000.00 | surance Policy on her life of |
| Blount Construction Co. | Jan. 13, 1914, | 5,000.00 | $20,000.00. |
| Packard Land Co., | Dec. 24, 1913, | 1,407.59 | |
| Packard Land Co., and W. A. Blount, | Dec. 24, 1913, | 2,500.00 | |

Which said notes and collateral was, on the 5th day of December, A. D. 1913, and up to the time of the payment of said notes by the Receivers, as hereinafter alleged, held by the Mutual Alliance Trust Company, as security for said notes.

That at the time of the collection of said draft, theretofore owned by your petitioner, and its credit by the Mutual Alliance Trust Company to the account of the Pensacola State Bank, there was a further credit standing on its books, of about Three Thousand, Eight Hundred ($3,800.00) Dollars, and by the said act of the Mutual Alliance Trust Company, aforesaid, the Pensacola State Bank did receive a total credit of about Four Thousand, Eight Hundred and Eighty-eight ($4,888.53) Dollars and Fifty-three Cents, including your petitioner's draft.

Your petitioner charges that said acts of said Mutual Alliance Trust Company were done after it knew of the formal insolvency of the Pensacola State Bank, and after it knew that the same had been taken charge of by the Comptroller, and the appointment of Receivers by this Honorable Court.

6.

Your petitioner is further informed and believes, and upon such information and belief alleges, that after the appointment and qualification of the Receivers herein, and in the due administration of the receivership, it was deemed by the said Receivers to be for the benfit of the administration of said receivership, to pay the said notes due by the Pensacola State Bank to the Mutual Alliance Trust Company, as a means and method of obtaining said notes and collateral, deposited with it to secure same, and there-

thereupon the said Receivers did pay said two notes of Ten Thousand ($10,000) Dollars each, using therefor the said credit of Four Thousand Eight Hundred and Eighty-eight and 53/100 ($4,888.53) Dollars, due from the Mutual Alliance Trust Company, including the proceeds of the draft of your petitioner, deposited as aforesaid, together with other funds of the Pensacola State Bank; and the said Receivers did obtain for the benefit of said estate, the notes and collateral securities hereinbefore listed, and deposited with the Mutual Alliance Trust Company, and the assets of the Pensacola State Bank, in the hands of said Receivers, and being administered as said trust, have thereby been increased and benefitted in the sum of One Thousand ($1,000.00) Dollars and more, by reason of the collection and credit of said draft by the Mutual Alliance Trust Company, and its use by the Receivers in paying said notes and regaining said collateral and notes.

That the said Receivers have collected and reduced to money a part of the said notes and collateral received from the Mutual Alliance Trust Company, in an amount in excess of One Thousand Dollars, and mingled the same generally in the assets of said bank in their hands.

That at the time of the acts aforesaid of said Receivers they knew of the claim and demand of your petitioner in respect to rescission of said endorsement. That they further knew, or could have known by the exercise of ordinary care, and by consulting books and correspondence of said bank in their possession, that said draft had been sent by the Pensacola State Bank to the Mutual Alliance Trust Company for collection, and that its proceeds formed a part of the said credit given by said Mutual Alliance Trust Company to said Pensacola State Bank.

Your Petitioner did not know, and could not ascertain, to whom said draft had been sent, or to whom to give no-

tice of his equities, until said Receivers had used said proceeds of said draft in the said manner above alleged; and your petitioner was thereby deprived, without any fault on his part, of any recourse against the Mutual Alliance Trust Company, and he did not acquiesce therein. Petitioner had theretofore demanded of the Receivers that they trace and account to him for said draft, which they failed to do, or to inform him of its disposition.

### 7.

That on the 4th day of December, A. D. 1913, and at the time of the receipt for deposit of the said draft, then owned by your petitioner, for deposit, as above alleged, the said Pensacola State Bank was in contemplation of insolvency; that at the time it was reasonably apparent to its officers that it was unable to pay its obligations, and that it would soon be obliged to suspend its operations; that on said date, and prior to the receipt for collection of the said draft, the officers of the said bank knew that the said bank was hopelessly insolvent, and so the fact was, and was unable to pay its obligations, and that it would soon be obliged to suspend payment;

### 8.

That your petitioner, on the 4th day of December, A. D. 1913, and at the time he made the deposit of the said check or draft aforesaid, was wholly unaware of the insolvent condition of the said bank, but, on the contrary, believed the said bank to be solvent, and that by continuing business with open doors, and otherwise representing to your petitioner and all other persons dealing with it, that the said bank was solvent, and through the fraud

of the officers of the said bank, practiced upon your petitioner, by reason of the remaining open of the said bank for business on the said 4th day of December, A. D. 1913, when the said officers of the said bank then knew of its insolvency, and by reason of the wrongful neglect of the officers of said bank to disclose said fact to your petitioner, the possession of said draft was obtained from your petitioner.

WHEREFORE, your petitioner being remediless save in this Court, in this action, prays that he may be admitted as a party to the said action, and that he may be permitted, after due notice to the said Receivers, to prove the allegations of this petition, and that this court may be pleased to grant to your petitioner an order upon the receivers aforesaid, requiring the said Receivers, out of the assets of the said bank, to pay to your petitioner the said sum of One Thousand Dollars, together with interest thereon to the date of the decree, or to decree your petitioner to be entitled to a lien or trust, to be fixed as a charge upon said notes and securities received by said Receivers from the Mutual Alliance Trust Company of New York, and to have the same sold to satisfy said charge, lien, or trust, and for such other and further relief in the premises as your petitioner may be entitled to receive."

To this petition the Receivers demurred on grounds:

"1.   That the allegations of said petition affirmatively show that petitioner is not entitled to the relief prayed for.

2.   It affirmatively appears that the proceeds of the check deposited by petitioner never came into the custody of the Pensacola State Bank or the receivers thereof.

3.   It affirmatively appears that the proceeds of said check were applied by the Mutual Alliance Trust Company

of New York on an indebtedness due by the Pensacola State Bank to said Trust Company.

4. It affirmatively appears that the specific fund derived from the payment of said check cannot be traced into the hands of the receivers of said Pensacola State Bank."

The following decree was rendered by the court:

THIS CAUSE COMING ON THIS DAY TO BE HEARD upon the Demurrer of the Receivers interposed to the Petition of H. A. Walker, and it appearing to the Court that the said Intervenor has been duly admitted as a party to said cause of action, to present his petition of intervention, and that the demurrer of the Receivers interposed to the original petition herein has, by agreement of counsel, been interposed and made to apply to the petition as amended and filed of even date herewith, and the said amended petition and the demurrer thereto having been duly considered by the Court, and the Court being advised therein:

IT IS NOW ORDERED, ADJUDGED AND DECREED that the demurrer of the Receivers thereto be, and the same is hereby sustained, and the intervening petitioner, by his Solicitor, having announced that permission to file further amendments is not desired:

IT IS FURTHER ORDERED AND ADJUDGED that the said petition be dismissed, and the relief therein prayed for denied, the Court being of the opinion that the facts stated in said petition do not entitle petitioner to the relief prayed for in said petition."

H. A. Walker, the petitioning intervenor, appealed and assigns as error:

"1.    That the court erred in sustaining the Receivers, J. B. McNeill's and W. C. Robert's Demurrer to petition-er's intervening Petition.

2.    That the court erred in dismissing the petitioner's intervening Petition.

3.    That the court erred in finding that the facts stated in intervening petitioner's petition did not entitle peti-tioner to the relief prayed for in said intervening Peti-tion."

*F. W. Marsh,* for Appellant;

*John P. Stokes* and *Scott M. Loftin,* for Appellees.

WHITFIELD, J., *(after stating the facts).*—The question to be determined is whether the facts alleged in the peti-tion and admitted by the demurrer are sufficient for de-creeing a trust in favor of the petitioner who deposited a draft to be credited when collected by the bank which failed to open its doors the next day, the draft being col-lected and the proceeds applied for the benefit of the bank after receivers were appointed.

It is alleged that "only a short time before the close of banking hours" on December 4, 1913, Walker deposited a draft for $1,000.00 payable in Vermont "with the Pensa-cola State Bank, to be forwarded and collected by said bank, and its proceeds, when collected, to be credited to petitioner;" that the draft was forwarded by the bank to New York for collection; "that sometime during the night of December 4, 1913, it was decided by the said bank to suspend payment, and to close its doors for business, and to turn the assets of the bank over to the custody of the Comptroller of the State of Florida; and in pursuance of

said decision, the Comptroller, on the morning of December 5, 1913, took charge of the said bank and its assets, and the said bank was closed for business;" that on Desember 6, 1913, the receivers were appointed "to administer the said assets; all of which was effected prior to the receipt of the said draft" in New York; that on December 5, 1913, petitioner telegraphed the paying bank in Vermont "of the insolvency of the Pensacola State Bank, and demanded that it stop payment and refuse to pay the said check or draft when presented;" that the paying bank "notwithstanding the direction and demand of your petitioner, did pay the said draft or check when presented;" that the receivers were duly advised of the stated circumstances and that petitioner "elected to rescind the endorsement of said draft, and intended to reclaim the same, or the proceeds thereof, where and when found;" that the New York bank collected the draft and applied the proceeds to the indebtedness of the Pensacola State Bank to the collecting New York bank, and such proceeds with other funds of the bank paid the indebtedness of the Pensacola bank to the New York bank, thereby enabling the receivers to get from the New York bank the collateral securities belonging to the Pensacola bank which had been pledged with the New York bank; that at the time of the receipts by the Pensacola bank of the draft from the petitioner, "it was reasonably apparent to its officers that it was unable to pay its obligations, and that it would soon be obliged to suspend its operations;" that petitioner was wholly unaware of the insolvent condition of the Pensacola bank when he deposited the draft for collection.

Under the facts and circumstances alleged and admitted by demurrer a trust should be decreed in favor of the petitioner for the proceeds of the check that was deposited for collection on the eve of the closing of the bank, the pro-

ceeds having been actually collected after the failure of the bank and applied to the purposes of the bank assets in the hands of the receivers for the benefit of creditors and stockholders of the bank.

The order dismissing the petition is reversed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOKCER, J. J., concur.